# BENJAMIN BAGNALL, Plaintiff in Error,

## vs.

# STEPHEN V. R. ABLEMAN, Defendant in Error.

### ERROR TO MILWAUKEE CIRCUIT COURT.

The state governments have, in their sovereign capacity, full jurisdiction of the writ of *habeas corpus*, and the federal government is inhibited from suspending its privileges, except in case of rebellion or invasion.

The constitution of this state confers the power to issue, hear and determine the writ of *habeas corpus* upon the Supreme and Circuit Courts, and though the legislature cannot inhibit or restrict these courts in the exercise of this power, it may confer the power upon other judicial courts or officers, under such limitations as it may deem proper.

The judge in vacation to whom application is made for a writ of *habeas corpus*, is compelled to grant the same, unless it is clearly apparent from the petition or papers annexed, that the petition is not entitled to it.

The person to whom the writ of *habeas corpus* is directed, is bound to obey the same, no matter by what authority or warrant, by whomsoever issued, he may hold the prisoner. It is enough for him to know that the state demands of him to show by what authority he restrains the prisoner.

The state, by virtue of its own sovereignty, has a right to inquire for itself, through its own officers, into the condition and cause of restraint of its citizens.

The District Court of the United States for the District of Wisconsin, has no jurisdiction over offenders against the laws of the United States committed in the district of Michigan.

The 33d section of the judiciary act of 1789 (U. S.), confers no *exclusive* jurisdiction upon a federal judge, of the process and proceedings for the arrest and removal of the persons therein named.

An indictment presented by the grand jury is sufficient to authorize the arrest of the defendant by the process of the court in which the indictment is found; but a copy of an indictment is not *alone* sufficient to authorize his arrest in a foreign jurisdiction.

Under the 33d section of the judiciary act of 1789 (U. S.), a person arrested in another state or district than the one in which the offence was committed, is entitled to give bail (if the offence be bailable) for his appearance before the proper court.

A warrant issued by the United States district judge for the district of Wisconsin, for the arrest and delivery *forthwith* to the marshal of Michigan, of a person in this state, indicted in the United States District Court for the District of Michigan, without giving the person charged an opportunity to give bail for his appearance, if the offence be bailable, is unauthorized by law, and affords no protection to the marshal executing it.

Bagnall vs. Ableman.

Under the 33d section of the judiciary act of Congress, 1789, a United States judge acts as a mere magistrate, whose jurisdiction and power are strictly limited by the statute, unaided by any presumption.

If the judge, who discharges upon *habeas corpus*, has jurisdiction of the writ in the given case, a re-arrest of the person so discharged for the same cause, subjects the person so offending, to the penalty prescribed by statute; and his official character as an officer of the federal government can afford him no immunity from such penalty.

The state writ of *habeas corpus* issued by the proper authority must be obeyed, to whomsoever it may be directed, by what process soever he may claim to restrain the prisoner.

THIS was an action of debt commenced in the Milwaukee Circuit Court by the plaintiff in error, against the defendant in error, to recover the sum of $1,250, the penalty prescribed by statute, for the re-arrest of the plaintiff for the same cause, after he had been discharged on *habeas corpus*.

It appears from the record, that the plaintiff, a citizen and resident of this state, was, at the June term of the District Court of the United States for the District of Michigan, indicted for removing timber, to wit: two hundred thousand feet of pine lumber of the value of two thousand dollars, the property of the United States, from the lands of the United States, at the mouth of the Manistee River, in the county of Manistee, in the said district of Michigan, with intent to dispose of the same to his own use.

On the 9th day of September, A. D. 1853, the honorable Andrew G. Miller, judge of the District Court of the United States for the District of Wisconsin, issued the following precept or warrant:

" *United States of America, District of Wisconsin, ss :*

The President of the United States to the Marshal of the District of Wisconsin, greeting:

Whereas Benjamin Bagnall has lately been indicted in the District Court of the United States for the District of Michigan, for removing from the lands of the United States, with intent to dispose of the same for his own use and benefit, certain timber of the United States, contrary to the form of the statute in such case made and provided, a copy of which indictment duly certified is hereunto annexed; this is therefore to command you to arrest the said Benjamin Bagnall, if he may be found in the

district of Wisconsin, and deliver him forthwith to the custody of the marshal of Michigan.

In witness whereof, I have hereunto set my hand and seal, this ninth day of September, in the year of our Lord one thousand eight hundred and fifty-three, and of the independence of the United States of America the seventy-eighth."

(Signed) · "A. G. MILLER,

"*District Judge of the United States for the District of Wisconsin.*"

To this warrant was annexed a copy of the said indictment, certified by the clerk of the District Court of the United States for the District of Michigan, to be a true copy of an indictment exhibited and filed in said court on the 9th day of July, 1853, under the seal of said court.

On the 10th day of the same September, the deputy of the United States marshal for the district of Wisconsin, by virtue of the above-mentioned warrant, arrested the plaintiff, and while in the custody of the deputy marshal, he applied in due form to H. N. Wells, Esq., then county judge of Milwaukee county, for a writ of *habeas corpus*, which was granted, by virtue of which the plaintiff was taken before the said county judge, and after full hearing and argument, was discharged from the custody of said marshal.

On the 29th day of September, Ableman, the defendant, marshal of the United States for said district of Wisconsin, re-arrested and imprisoned the plaintiff for the same cause, and by virtue of the same process.

To the declaration setting forth these facts, the defendant demurred, assigning several causes, the only one of importance, being, that the jurisdiction of the judge of the District Court was exclusive in the premises, the process regular and legal, and that the county judge had no jurisdiction, and the proceedings before him in the matter of the *habeas corpus*, were *coram non judice* and void. The court below sustained the demurrer, and rendered judgment for the defendant for costs.

*Yates*, for the plaintiff in error.

*Sharpstein*, for the defendant in error.

*By the Court*, SMITH, J. Some of the questions involved in

this case have heretofore been considered and settled by this court, but there are others presented of considerable practical importance, which have not been directly determined.

It appears from the record that the plaintiff in error, Bagnall, was indicted in the District Court of the United States for the District of Michigan, for removing timber, &c., from the lands of the United States in the said district of Michigan, at the June term of said court, 1853. Bagnall was a resident of this state, and on the 9th day of September, 1853, the Hon. Andrew G. Miller, district judge of the United States for the district of Wisconsin, issued a warrant to the marshal of said district, reciting the fact of the indictment and the substance thereof, and commanding him to arrest the said Bagnall, if to be found in the district of Wisconsin, and to deliver him *forthwith* to the custody of the marshal of Michigan. Annexed to the warrant was what purported to be a copy of the indictment, certified by the clerk to be "a true copy of an indictment exhibited and filed in this court against Benjamin Bagnall, on the 9th day of July, in the year of our Lord one thousand eight hundred and fifty-three, the same being carefully compared by me and found to be correct." This certificate is signed by the clerk, the 2d day of September, 1853, and the seal of the District Court of the United States for the District of Michigan, affixed.

By virtue of this warrant the deputy of the marshal of Wisconsin arrested Bagnall, and was about to deliver him into the custody of the marshal of Michigan to be taken out of this state, when application was made to the Hon. H. N. Wells, then county judge of Milwaukee county, for a writ of *habeas corpus* in his behalf, alleging that his imprisonment was illegal, &c. The writ was allowed, served and returned, and upon the hearing, the prisoner was discharged, and on the 29th of September, Bagnall was again arrested and imprisoned, as is alleged, by the defendant in error, for the same cause, which of course means upon the same warrant; whereupon the plaintiff in error brought this suit to recover the penalty prescribed by the statute for a re-arrest as therein described. The declaration of the plaintiff sets forth these facts with others, to which the defendant interposed a demurrer, assigning several causes. The court below

sustained the demurrer and gave judgment for the defendant. The plaintiff now brings the case here by writ of error.

We think it is very clear that the state governments have, in their sovereign capacity, full authority of the writ of *habeas corpus*, and that the federal government is inhibited from suspending its privileges, except in case of rebellion or invasion. *Const. U. S. Art.* 1, § 9, *p.* 2. This power (to suspend the writ) was necessary to be vested in Congress, because in such cases it might become essential to the preservation of the United States government, or that of a state or states. But it is *only* in case of rebellion or invasion, that the general government can interfere with its privileges. The state legislature may prescribe what courts or officers may issue it (limited only by the state constitution), and the formalities that shall be observed, touching the issuing, hearing and determination thereof. The constitution of this state confers the power to issue, hear and determine this writ, upon the Supreme and Circuit Courts. But the legislature, though it cannot inhibit or restrict those courts in the exercise of this power, may confer the power upon other judicial courts or officers, under such limitations and restrictions as it may deem proper. Accordingly the legislature has by chapter 124 of the Revised Statutes, made provision for the issuing, hearing and determining of the writ, by any judge of the Supreme, Circuit or County Court, *in vacation*, and has prescribed the mode of procedure in such cases.

Section 6, of chapter 124, aforesaid, provides, that " Any officer empowered to grant any writ applied for under this chapter, to whom such petition shall be presented, shall grant such writ without delay, unless it shall appear from the petition itself, or from the documents annexed, that the party applying therefor, is, by the provisions of this chapter, prohibited from prosecuting such writ."

By this section, the officer to whom the petition for the writ is presented, is compelled to grant the same, unless he clearly perceives that the party is not entitled to it. He is bound to judge whether he is thus entitled or not, and as the law has made him (the judicial officer) to judge of the matter, his judgment is conclusive in the first instance. He may deny the application, but that is a matter upon which he must exercise his

judicial discretion. Having done so, and granted the writ, no person can be permitted to refuse obedience on the ground that the applicant was not entitled to it. It would be monstrous to hold, that the person to whom the writ of *habeas corpus* is directed, and on whom it is served, may dispute the correctness of the decision of the judge who awarded it, and refuse obedience; assume to himself the right to return the writ or not, according to his own pleasure or discretion. The law has not made him, but the judge, the officer who is to decide that question. It matters not what the nature of the warrant or authority by which he holds the prisoner may be, by whomsoever issued, what offence soever it may charge, whatsoever it may command, he is bound to make return to the *habeas corpus*, and exhibit such warrant or authority to the court or judge before whom it is returnable. Anything short of this is a contempt of the authority of the state, punishable as such, in addition to other penalties which the law may impose. It is a mistake for a marshal of the United States, or any other officer or person, to suppose that his authority, or that of the process under which he may claim to act, is superior in such case to that of a *county* judge; that he cannot be made to respond to a magistrate of an inferior court. It is not the authority of the judge, whether inferior or superior, that he thus defies; it is the authority of the sovereign state that he contemns, sending out its high prerogative writ to inquire into the condition of its citizen, and the cause of his restraint, and it is not for him to whom the writ is directed, to determine whether the state shall exercise this sovereign power through a judge of one grade or another. It is enough for him to know that the state demands of him by what authority he restrains the prisoner, that the state requires of him obedience to that writ, and that unless the Congress has suspended its privileges in case of rebellion or invasion, no power on earth can absolve him from such obedience, or shield him from the consequences of disobedience. The representatives in the National Convention which framed the constitution of the United States, took care to protect the states and their sovereignty, as well as the liberties of their citizens, against any immunity that federal functionaries might claim from obedience to this writ of *habeas corpus*, and provided expressly, that its privileges should

never be suspended except in cases of rebellion or invasion. But if a deputy marshal be permitted to refuse obedience to this writ, on the ground that he supposed he was acting under lawful authority of the United States, would not the privileges of the writ be most effectually suspended? If a United States district judge should issue his warrant to arrest and transport a citizen of Wisconsin to California, on the ground that he had been indicted there in the United States Court for *gaming*, and such a warrant should be held to override the power of the state to inquire into the legality of the arrest and proposed extradition by virtue of such warrant, would not the privilege of the writ be suspended? It is worse than folly, it is mockery, to say that the prisoner could apply to the same judge who issued the warrant. The judge who would issue such a warrant would of course deny the benefit of a writ of *habeas corpus*, by which relief from an arrest under it could be had. Besides, the United States judge is not the officer of the state. The *state*, by virtue of its own sovereignty (never delegated or relinquished in this behalf), has a right to inquire for *itself* through *its own officers*, into the condition and cause of restraint of its citizens.

The states, therefore, are bound by every consideration of self-respect, and even of self-protection, to insist upon obedience to this writ. And the federal functionaries are bound by every suggestion of constitutional obligation and fidelity to their oaths, to yield obedience to its mandates. Refusal on their part to obey it, is not only a gross contempt of the authority of the state of which they are citizens, but a palpable violation of the constitution of the United States, under which they have official existence, and which they by oath are bound to support.

On the return of the writ of *habeas corpus*, all questions touching the jurisdiction of the officer who issued it, as well as the right of the petitioner to demand it upon the petition which he has presented, may be properly raised and so presented that the decision thereon may be made the subject of review in a superior court. Whether or not any question in regard to the jurisdiction of the judge of the County Court was raised on the return of this writ of *habeas corpus*, the record does not inform us. But it is conceded, that if Judge Wells had no jurisdiction in

the matter of the petition and discharge, his judgment therein is a nullity. The whole proceeding is *coram non judice* and void.

It is necessary to inquire, therefore, what was essential to give the officer jurisdiction; and,

1st. He must be a judge of a supreme, circuit or county court (or *perhaps*, an officer exercising the powers of a circuit judge at chambers), being within the county where the prisoner is detained, or if there be no such officer within the county, or if he be absent, incapable of acting, or shall have refused the writ, then to some officer having such authority, residing in any adjoining county.

2d. A petition must be presented to such officer, stating, in substance, that the person in whose behalf the writ is applied for is imprisoned or restrained of his liberty; that such person is not detained or committed by virtue of any process, judgment or decree, or execution specified in the second section of said chapter 124, together with the other specific allegations and requirements prescribed by the chapter aforesaid, and must be verified by the oath of the party making the application.

These are the requisites to the jurisdiction of the officer, to issue the writ. He may deny the application, if it appear from the petition or documents annexed, that the party applying is, by the provisions of the chapter, prohibited from prosecuting the writ; that is, if from these he is satisfied that if return be made and the facts shall appear as stated in the petition and documents annexed, the petitioner would, by the provisions of said chapter, be prohibited from proceeding any further, the prisoner would have to be remanded. But if the writ be issued, it is not for the party to whom the writ is directed to say that the petitioner is prohibited by the provisions of that chapter from prosecuting it. He cannot know what the petition contains, nor what matters may appear on the return, which will entitle the prisoner to a discharge. It is his duty to return it.

But, although the writ may have been issued, it may yet appear from the return that the party is prohibited from prosecuting it, and that the officer is compelled to cease all further proceedings thereon, and forthwith remand the party. These cases are clearly pointed out by section 18 of the statute, which is as follows:

Bagnall vs. Ableman.

" It shall be the duty of the officer forthwith to remand such party, if it shall appear that he is detained in custody, either:

1. " By virtue of process issued by any court or judge of the United States, in a case where such court or judge has exclusive jurisdiction, or:

2. " By virtue of the final judgment or decree of any competent court of civil or criminal jurisdiction, or of any execution issued upon such judgment or decree, or:

3. " For any contempt specially and plainly charged in the commitment, by some court, officer or body having authority to commit for the contempt so charged, and,

4. "That the time during which such party may be legally detained, has not expired."

The principal, if not the only point relied upon by the defendant in error, is, that this case falls under the first clause of section 18 of chapter 124, and that, that fact appearing in the documents annexed to the petition, the county judge ought not to have issued the writ, and at all events, as it was clearly shown by the return, he was ousted of jurisdiction, and should have remanded the prisoner. Waiving for the present, the question, whether or not, if the warrant issued by the district judge of the United States, was issued in a case of which such judge had exclusive jurisdiction, it would have ousted the county judge of farther jurisdiction of the writ of *habeas corpus*, we will examine the question of jurisdiction claimed in behalf of the former.

That the act of unlawfully removing timber from the lands of the United States is an offence of which the *proper courts* of the United States have exclusive jurisdiction, will not be denied. But that the District Court of the United States for the District of Wisconsin has any jurisdiction over offences of that kind committed in the district of Michigan, is denied. The jurisdiction of such courts is confined to the district. They have no common law jurisdiction of crimes or offences. All the power they have in this behalf is derived from the acts of Congress. But Congress cannot extend their jurisdiction beyond the district. The sixth article of amendments to the constitution of the United States provides that: "In all criminal prosecutions the accused shall enjoy the right to a speedy and public trial

by an impartial jury of the state and district where the crime shall have been committed."

If the accused had been indicted for a like offence committed in Wisconsin, in the District Court of Wisconsin, the process of that court would have been proper to bring in the defendant. But the fact that he was indicted in a district court of Michigan, gave no more authority to the judge of the District Court of Wisconsin to issue a warrant for the arrest of the defendant, than it did to a justice of the peace or the mayor of the city of Milwaukee.  Nor did his official character, as such, give him any power or jurisdiction of the case pending in the District Court of Michigan.  If he has any authority, power or jurisdiction in the premises, we must look for it in some special statute of the United States conferring such authority or power, distinct from the power and authority which attach to him *as* judge of such District Court.

It is conceded that the only act of Congress conferring such power, is the 33d section of the judiciary act, approved September 24, 1789; which is as follows: " That for any crime or offence against the United States, the offender may, by any justice or judge of the United States, or by any justice of the peace, or other magistrate of any of the United States, where he may be found, *agreeably to the usual mode of process against offenders in such state*, be arrested, and imprisoned or bailed, as the case may be, for trial before such court of the United States, as by this act has cognizance of the offence; and copies of the process shall be returned as speedily as may be into the clerk's office of such court, together with the recognizances of the witnesses, for their appearance to testify; which recognizances the magistrate before whom the *examination* shall be, may require on pain of imprisonment.  And if *such commitment of the offender, or the witnesses* shall be in a district other than that in which the offence is to be tried, it shall be the duty of the judge of that district where the *delinquent* is imprisoned, *seasonably* to issue, and the marshal to execute, a warrant for the removal of the offender and the *witnesses*, or either of them, as the case may be, to the district in which the trial is to be had.  And upon *all arrests* in criminal cases *bail shall be admitted*, except where the punishment may be death, in which cases it shall not be ad-

mitted, but by the Supreme or a circuit court, or a judge of a district court, who shall exercise their discretion therein, regarding the nature and circumstances of the offence, and of the evidence, and the usages of law. And if a person committed by a justice of the Supreme, or a judge of a district court, for an offence not punishable with death, shall afterwards procure bail, but there be no judge of the United States in the district to take the same, it may be taken by any judge of the Supreme or Circuit Court of law of such state."

This is the only law of the United States under which this proceeding on the part of the marshal is attempted to be justified. Let us examine this section, and ascertain what *exclusive* jurisdiction it conferred upon the district judge of the United States for the district of Wisconsin, so as to require the county judge to remand the prisoner on the production of the warrant for his arrest. It will not be pretended that the district judge had *any* jurisdiction of the *offence* charged to have been committed in another state and district. Of course, then, he had no such *exclusive jurisdiction*. Is it contended that he had *exclusive* jurisdiction of the proper *process* to arrest the accused ? On the contrary, the jurisdiction, or rather power, for it hardly merits the name jurisdiction, conferred by that act, is common to any judge or justice of the peace. No greater authority is conferred, in this respect, upon the one than upon the other. Their grade is the same. Here, then, nothing is exclusive.

But what are the powers here conferred upon the judges and magistrates of the United States and states ? It is to arrest, imprison or bail, any offender against the United States *in* the state where he may be found ; that is, arrest him, hold him to bail if there be probable cause to believe him guilty, or if he neglect or refuse after reasonable opportunity offered, to give bail, to imprison him. But this is not an arbitrary power, to be exercised according to such forms, and in such manner as the judge may see fit to adopt, but it must be " *agreeably to the usual mode of process against offenders in such state.*" The usual " mode of process " in this state, is, and was, that the defendant shall be charged on oath, before a warrant can issue. Here was no oath to authorize the warrant. It is said that a copy of the indictment is equivalent and more than equivalent. An indict-

ment presented in court by the grand jury is sufficient to au-
thorize the arrest of the defendant by the process of that court.
But a copy of an indictment is not alone sufficient to authorize
his arrest in a foreign jurisdiction.

It is not agreeable to the usual mode of process against offend-
ers in this state, to issue a warrant for the arrest of a person, on
the production to the judge or magistrate of a copy of an indict-
ment found against him in another state. Chapter 143 of the
Revised Statutes, makes ample provision for such cases. But
neither the laws of the United States nor of the state authorize
an arrest upon the production of a copy of an indictment found
in a foreign jurisdiction. By the act of Congress, demand is to
be made by the executive of the state " into which the person
shall have fled," who must be satisfied that the person is *then*
charged with "treason, felony or other crime," and in addition,
he must be demanded by the governor or chief magistrate of the
state, and the indictment or complaint must be certified by him
as authentic, and after all these the governor must be satisfied
that the charge or indictment is still pending, and that the per-
son accused may be lawfully required there to appear and answer
the charge. But as these provisions are not applicable to this
case, it is unnecessary to pursue them. It is erroneous, however,
to suppose, that merely because an indictment has been once
found, and a demand is made, the executive of a state is com-
pelled upon these alone, to deliver the person accused. The
great object of the constitution and the law is, to arrest and de-
liver up for trial "*fugitives* from justice." Chapter 143 prescribes
the "usual mode of process" in this state, against offenders
found in this state charged in other states. Section 3 provides
as follows: Whenever any person shall be found within this
state, charged with any offence committed in any other state
or territory, and liable by the constitution and laws of the
United States, to be delivered over upon the demand of the ex-
ecutive of such other state or territory, any court or magistrate,
authorized to issue warrants in criminal cases, may, *upon com-
plaint under oath, setting forth the offence, and such other matters as
are necessary to bring the case within the provisions of law*, issue a
warrant to bring the person so charged before the same, or some

other court or magistrate *within the state*, to answer such complaint, as in other cases."

Section 4 of the same chapter provides, for the examination of the person charged, for requiring him to recognize for his appearance at a future day, or in default thereof, for his commitment until a reasonable time for demand to be made for him upon the executive.

It is not intended to intimate that the proceedings here provided for, are applicable to a proceeding adapted to a case like the one presented by the record in this case, but reference is made to them to show what are the usual processes against offenders in this state. Warrants for the arrest and imprisonment of the citizen are not allowed to issue, but upon complaint under oath, or upon an indictment found in our own courts, or the United States Court for this district, or the warrant of the governor in case of a "fugitive from justice." In none of the modes here provided for, is an analogy to be found to the proceedings instituted against the plaintiff in error. To admit that a judge of the United States, upon the production of an indictment against a citizen, found in another state, without oath that the same is still pending, or unanswered to, without inquiry as to identity, without possibility of bail, without even bringing the person before him, may issue his warrant for the arrest and transportation of such a citizen to a distant state, forthwith, would be to admit a state of things wholly incompatible with constitutional government, or constitutional safeguards. See *Art. 4 of Amendments to Const. U. S.* The warrant issued by the judge in this case, was not, as is seen, "agreeably to the usual mode of process against offenders in this state." Here was no complaint on oath, nor anything equivalent thereto, recited in the warrant; for a copy of an indictment found in a foreign jurisdiction is not equivalent to a complaint on oath, made in this jurisdiction.

All that is here known is, that on the 9th day of July, the indictment was exhibited and filed in the District Court for the District of Michigan. But there is no certificate that it was still pending. It may have been quashed; the defendant may have been tried upon it and acquitted, or convicted and paid the penalty, or he may already have given bail for his appearance.

There is not the slightest intimation that the indictment was still pending. And will it be contended that a citizen can be arrested, and sent from his home and family in Maine, to Louisiana, or from Virginia to California, upon the mere order of a district judge of the United States, because a certified copy of an indictment *once* found against him is shown to such judge?

Again, the accused has the right to an examination. The judge ought, under this act of Congress, to have had the accused brought before him, that he might have proved, if he could, that he had already answered to the indictment, that he had already given bail for his appearance, or that it had been otherwise disposed of. He also had a right to demand proof of his identity with the person charged. But without seeing the individual, without the slightest proof of identity, a warrant is issued against a person in Wisconsin of the same name as the one indicted in Michigan, ordering his arrest and immediate extradition from his state and his home. No such power is given by this act of Congress to a judge of the United States, or to any other officer.

Again; this statute of the United States positively requires that the judge or magistrate *shall* admit the accused to bail, unless the punishment of the offence is, or may be death. But here, by this warrant, where a person is charged only with a misdemeanor, he is ordered to be taken out of the state, to be thrust into the custody of a foreign officer forthwith, without the least chance or opportunity to give bail. It was his absolute, positive right to demand that he be let to bail. And in order to afford him reasonable opportunity to procure bail, this statute will not permit his removal from this state or district until after he has been imprisoned for *not giving the required bail*. The judge cannot order his removal until after his imprisonment; and then it is to be "*seasonably*" done. A sufficient time is to be allowed for the friends of the accused to gather around him and procure bail for his appearance to answer. The judge has precisely the same power to order the removal of the witnesses, that he has of the accused, viz: after he has been committed for *delinquency* in giving bail as required by the magistrate. Bail is as much the right of the accused as of the witnesses, and if the warrant of the judge in this case is to be upheld, he may ar-

bitrarily order the instantaneous removal of any man or number of men from the state, in violation of the absolute constitutional right, alike of the accused and witnesses, to be let to bail.

The object of this statute is to provide for the arrest and examination of offenders against the United States, and to hold them to bail for their appearance to answer. There is no difference in the mode of proceeding, whether the person be indicted or not. If indicted, he is equally entitled to bail. If this statute does not apply to persons indicted, then it has no application to the present case, and the arrest and all the proceedings were without any legal authority whatsoever. If it does apply to cases where the accused is under indictment, then he was entitled to examination, and to show that the case had been disposed of, that he had already entered bail, that the person indicted was a different person; he was entitled to a reasonable term to procure bail for his appearance, before the proper court. The whole statute contemplates an examination. Less proof might be requisite, perhaps, in case of an indictment, than upon a mere complaint, but still some proof of identity, at least, is requisite. *Conklin's Treatise*, 407. It contemplates the fixing of the amount of bail by the judge or magistrate; for he is called a "delinquent" after commitment, and placed in the same category as the witnesses who have failed to recognize. He is delinquent in not complying with the order to recognize, and is committed for such delinquency; *and until such commitment for such delinquency*, the judge cannot issue a warrant for his removal. He can only be "arrested, imprisoned or bailed, as the case may be, agreeably to the usual mode of process against offenders in such state." He is called a "delinquent imprisoned." Now, agreeably to the usual mode of process against offenders in this state, and in every other state, the accused is imprisoned for his delinquency in giving bail for his appearance, according to the order of the magistrate. He has an absolute right to bail, whether indicted or not; and it is only when he is delinquent in furnishing the bail, that the accused or witness can be imprisoned; and it is only when the "delinquent" offender or witness is imprisoned, that the judge may "seasonably" issue, or "the marshal execute a warrant for his removal." The laws of this state prescribing the "usual mode of process against of-

fenders," are as peremptorily obligatory upon the district judge of the United States and marshal, as any law of Congress; for this statute has adopted and makes them so. And there is a significance in the word "seasonably," as used in this act of Congress. After the delinquent witness or offender has been imprisoned for failing to enter into recognizance for his appearance at the proper court, the judge is "seasonably" to issue his warrant for his removal. Nothing is to be done rashly, or in haste or malice. A man is not to be snatched from his home on the instant, and carried into a distant foreign state. But a *season* is to be allowed, at least to procure bail, if not to arrange for his departure; and this *season* is to be allowed after his arrest, after his examination, after the amount of bail is fixed, and even after his imprisonment for his *delinquency* in not giving it.

It may not be necessary that the accused or the witness be actually confined in jail. But the order to recognize must be made, and the amount of bail fixed, and whether he is committed to prison, or to the custody of the marshal or officer, the judge has no right, power, authority or jurisdiction to order his removal, until he is "delinquent" in complying with such order. But the warrant returned by the deputy marshal, as the cause of the prisoner's caption and detention, barely recites that "whereas Benjamin Bagnall has *lately been* indicted in the District Court of the United States for the District of Michigan," &c., "a copy of which indictment, duly certified, is hereto annexed; this is therefore to command you to arrest the said Benjamin Bagnall, if he may be found in the district of Wisconsin, and deliver him *forthwith* to the custody of the marshal of Michigan. In witness," &c.

There is no recital that Bagnall has been examined and failed to recognize; no order to bring him before the judge; but the order is to arrest him, and *forthwith* to deliver him to the marshal of Michigan. He is utterly cut off from all and every opportunity to enter bail for his appearance, or make any defence whatever, and no alternative is left, but to be taken forthwith out of the state into Michigan. Now the 33d section of the act of Congress above quoted, and which is cited to legalize if not to justify this proceeding, is positive as to the right of the accused to bail in the district where he is arrested. "And upon all

*arrests* in criminal cases, bail *shall be admitted* except where the punishment may be death," &c.   And so careful is the statute that the accused shall not be deprived of this privilege, that it provides, that if he shall procure bail, and there be no judge of the United States in the district, to take the same, it may be taken by a state judge.   It will be perceived without pursuing the subject further, that the warrant of the marshal by which he arrested, and was about to transport Bagnall to Michigan, is without any legal authority; and that so far from his proceedings being in conformity with the act of Congress cited in their support, they are in direct violation of its spirit and letter; and that the case before Judge Wells on *habeas corpus* did not in the slightest degree approach the provisions of the 1st clause of the 18th section of chapter 124 of our Revised Statutes.   The district judge had no jurisdiction of the offence nor of any such process as was returned by the deputy marshal as the cause of the prisoner's caption and detention.

We have examined this point of the case carefully, because it is the main point in the case, and because we would not tolerate any interference with the process of a court or judge of the United States, on a case where such court or judge had exclusive jurisdiction, or in a case of concurrent jurisdiction where jurisdiction had already attached.   It is very clear to us that in the case before us, it was neither the one nor the other.   The District Court of the United States for the district of Wisconsin had no jurisdiction of the offence, and as we have shown, the judge had no jurisdiction of the process.   The former could not decide the questions involved; the latter was a mere magistrate deriving all his power from the statute of Congress.

But it has been suggested, that however irregular this process may have been, the marshal is to be protected in the execution of its commands.   The rule of law here suggested is well settled.   When the process is fair on its face, and issued by a court or magistrate of competent jurisdiction, it is a protection to the officer.   But if it be not fair and regular upon its face, or its recitals or commands show a want, or excess of jurisdiction in the court or magistrate issuing it, the officer is not protected in its execution.   If the district judge should issue a warrant for the arrest of a person, charging him with a common assault, the

Bagnall vs. Ableman.

warrant would show on its face a want of jurisdiction, and the officer would become a trespasser on serving it. So if the United States judge, acting as an examining magistrate, should issue a warrant for the arrest of a person for gaming, it would not justify the marshal in making the arrest, for the judge has no jurisdiction of such offence or such process. If, therefore, the process informs the marshal of the offence, and it appears to be one of which the judge or court had no jurisdiction, he is liable for all acts done under the supposed authority.

In this case the judge acted merely as a magistrate in the performance of a specific duty prescribed by statute, and the officer was bound to know the statute and the extent of the magistrate's authority. The statute specifies the process which the judge may issue, and the circumstances under which he may issue it, and these all persons are bound to know.

If, therefore, the warrant placed in his hand was not such as the statute authorized the judge to issue, or if its recitals informed him that the judge had no jurisdiction or authority of a process of the kind indicated by such recitals, he was not justified in its execution. The recitals of the warrant returned by the deputy marshal, show a case and a process remote from that of which the act of Congress gave the judge jurisdiction, and hence the imprisonment under it was illegal, because his warrant was void.

But the question here is, not whether the deputy marshal was justified in making the original arrest, but whether the county judge had jurisdiction of the case of *habeas corpus* before him, and whether his order discharging the plaintiff in error, was valid. Of these we have no doubt, and hence this re-arrest for the same cause was unlawful.

It is unnecessary to discuss the other points made by the defendant in error.

The judgment of the Circuit Court is reversed, and the cause is remanded for further proceedings, according to law.